Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Cathy Marie Steele,**<br><br>Debtor. | Chapter 13<br><br>Case No. 19-62534-dwh13<br><br>MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF STEVEN JOHNSON<br><br>NOT FOR PUBLICATION |

**I.     Introduction**

Steven Johnson, creditor and former husband of debtor Cathy Steele, objected to confirmation of her chapter 13 plan. For the reasons that follow, I overrule his bad-faith objection, but I reserve determination of whether the plan meets the best-interest test.

**II.     Introduction**

Johnson's objection is based on his allegation that Steele has acted in bad faith. Chapter 13 imposes two distinct but related good-faith requirements. Debtors can only obtain confirmation of a plan if they acted in good faith both in filing the petition and in proposing the

Page 1 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

plan.[1] Johnson's objection and his written and oral arguments do not clearly distinguish between these good-faith requirements. But in addition to criticizing the plan, he criticizes her decision to file and her preparation of certain nonplan documents. I thus read his objection as relating to both forms of good faith.

A finding of bad faith in the terms of a chapter 13 plan could, in theory, permit a debtor to file an amended plan to eliminate the bad-faith terms. But if bad faith is found to have infected a debtor's petition filing, the clock could be unwound, and that finding would practically foreclose any chapter 13 plan and require dismissal or conversion to chapter 7.

I held a hearing over four days at which Steele and Johnson presented evidence. I have considered the evidence as well as the parties' pre- and posttrial briefs. Steele objects that Johnson's brief contains many statements that are not supported by the record. I agree, and I won't consider any statements in the brief that assert facts that are not in evidence.

**III. Standards**

To determine whether Steele acted in good faith, I consider four factors: (1) whether she misrepresented facts, unfairly manipulated the Bankruptcy Code, or otherwise filed her plan or petition "in an inequitable manner"; (2) her history of filings and dismissals; (3) whether she filed the case in an attempt to defeat nonbankruptcy litigation; and (4) whether her behavior has been "egregious."[2]

With respect to the egregious-behavior factor, I reiterate a point that I made a few times during the evidentiary hearing. A great deal of Johnson's evidence and argument seemed intended to show that Steele has behaved improperly toward him or toward her current husband,

---

[1] 11 U.S.C. § 1325(a)(3).
[2] *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999).

Page 2 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Darrin Steele, with whom she is currently involved in a divorce proceeding. Because Cathy Steele and Darrin Steele share a last name, I will refer to him as Darrin. I don't intend to make any findings about those issues, because they are not relevant to the confirmation of her plan. I don't interpret "egregious behavior" to refer to every bad or dishonest thing that a debtor has ever done. I will consider only behavior that reflects on her honesty or motivations in filing her chapter 13 petition and plan. Any misbehavior by her in other situations may be a fitting subject for some other court to consider in an appropriate proceeding, but it does not concern whether the plan should be concerned. Specifically, I will not be deciding whether she acted in bad faith in the course of her divorces with Johnson or with Darrin, and I will not consider Johnson's arguments that she stole property from Darrin.

**IV.    Findings and conclusions**

   ***A.    Misrepresentations, manipulations, or filing in inequitable manner***

Johnson's pretrial memorandum focused primarily on this factor. He argued that Steele misrepresented all of the following:

- Her expenses, specifically that she overstated the number of her dependents, claimed false orthodontic expenses for a son, overstated her medical and car insurance obligations, her transportation expenses, and rent.

- Her assets, in that she owns or has possession of various vehicles, guns, tools, and electronics that she did not schedule, and in that she failed to schedule a claim that she and Darrin have against USAA.

- Her prospective assets, in that she is likely to receive a substantial portion of the value of a $200,000 home to be sold in her divorce.

Page 3 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Case 19-62534-dwh13    Doc 105    Filed 09/30/20

- The nature of Johnson's claim, in that the claim is partly for a divorce judgment and partly for attorney fees that were awarded to Johnson in the divorce, rather than entirely for a divorce judgment as Steele asserted in her schedules.
- The ages of her children.

### 1. Immaterial representations

Four of the misrepresentations alleged by Johnson are immaterial. First, he claims that Steele misstated the ages of their two children in Schedule J—by one year each.[3] I find that the error was careless at worst and so insignificant that I can't consider it evidence of bad faith.

Second, Johnson alleges that his and Steele's 19-year-old daughter will soon move out of Steele's house.[4] He does not seem to dispute that the daughter lived with Steele as of the filing date, so this was not a misrepresentation.

Third, Johnson complains that Darrin, Steele's current husband, is not "listed on this plan."[5] To the extent Johnson suggests that Darrin's income should be a source of payments of her creditors, I disagree; Darrin is not a debtor and is not under any obligation to contribute to her plan. To the extent Johnson is complaining of Steele's failure to include Darrin's income in certain initial filings, I address that issue in part IV.A.2(f) below.

Finally, I reject Johnson's argument that Steele mischaracterized his claim;[6] her description was not misleading.

---

[3] Docket item (DI) 47 at 3, ¶ 2.E.
[4] DI 47 at 3, ¶ 2.F.
[5] DI 47 at 4, ¶ 2.L.
[6] DI 47 at 4, ¶ 2.H.

Page 4 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Case 19-62534-dwh13    Doc 105    Filed 09/30/20

### 2. Other alleged representations

#### (a) Orthodontic expense

Johnson argues that the expense that Steele asserted for orthodontia was false and that her son never actually received the orthodontic work.[7] Her explanation was that she anticipated and had budgeted for the expense, but due to the COVID-19 pandemic the work has not yet been performed.

I find that explanation credible and reasonable.

#### (b) Number of dependents

Steele originally claimed five dependents.[8] But after objections from the trustee and later from Johnson, she reduced the number to two.[9] Johnson argues that she never had five dependents and that she misrepresented her household composition by saying so.[10] She says in response[11] that the claim of five dependents was accurate at the time, but her household composition later changed.

I accept the consistent testimony of Steele and her daughter, Kyana Hughes, supporting the number of dependent household members in August of 2019.

#### (c) Payroll withholding for insurance

Johnson disputes what he describes there as Steele's "claimed medical insurance payments of $223/month" and argues that the real amount of her "medical insurance payments"

---

[7] DI 47 at 2, ¶ 2.A.
[8] DIs 1, 30.
[9] DI 40.
[10] DI 47 at 2, ¶ 2.B.
[11] DI 98.

Page 5 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

were $75 to $80 per month for seven insureds, and she is "now" claiming herself and two dependents, but only reduced the medical expense by $28 per month to $195.[12]

The $223 amount appears as the amount of payroll withholding for insurance in the first two iterations of Steele's income schedule, filed on August 19, 2019 (the petition date), and November 5, 2019.[13] In her second-amended income schedule, filed on February 7, 2020, she changed that amount to $195.[14]

In Steele's opening posthearing memorandum, she argues that the trial exhibit combining several of Steele's pay stubs "establishes that the arithmetic addition of the deductions for various types of insurance sown on the monthly pay advices supports the numbers estimated" in the first two income-schedule iterations. Steele did not show her math to support that argument.[15]

In Johnson's posthearing memorandum, he relies on his own calculations of what he again refers to as "medical contributions" to "an average of $150.00 to $175.00 monthly." More specifically, he argues that the pay stubs for March through August 2019 "were consistently $197.99 a month and never $223.00."[16]

At the July 7, 2020, posthearing argument, Steele's lawyer identified components of her August 1, 2019, pay stub that he thought supported the $223 amount. The specific amounts that he identified in fact total only $197.14:[17]

| Category 1 | Category 2 | Amount |
|---|---|---|
| EMP/DEP AD&D | POSTAX/500K | $17.00 |
| LTD | | 27.13 |
| DEP LIFE | 5K/DEPNDT | 1.29 |

---

[12] DI 47 at 2, ¶ 2.C.
[13] DI 1, Sched. I at 2, item 5.e.; DI 30, Sched. I at 2, item 5.e.
[14] DI 40, Sched. I at 2, item 5.e.
[15] DI 98 at 10.
[16] DI 99 at 12:7-11.
[17] Trial Exhibit (Tr. Ex.) 16 at 5.

Page 6 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

| Category 1 | Category 2 | Amount |
|---|---|---|
| BASIC LIFE5% | PRETAX/5K | 0.05 |
| SHORTERM DIS | 60% BENEFIT | 34.66 |
| PRSWO 35 5% | EMP&FAMILY | 91.18 |
| EMPT LF/55-59 | PRETAX/40K | 13.88 |
| SP/DP 50-54 | POSTTAX/20K | 3.66 |
| VSP 5% | EMP&FAMILY | 1.20 |
| WLMT DENT5% | EMPT&FAMILY | 7.09 |
|  | Total | $197.14 |

The sums of the same categories in the stubs for each of March 1,[18] April 1,[19] May 31,[20] and July 1,[21] 2019, total $197.88. I thus find that Steele overstated her monthly insurance withholding on line 5.e of her income schedule by approximately $25.

But I have no evidence, other than the overstatement itself, that it was anything more than a mathematical miscalculation made by someone who assisted her to complete her income schedule. And it is implausible that a debtor would intentionally misrepresent a fact that can easily be confirmed, such as withholding amounts shown on her pay stubs.

### (d) Car insurance

Johnson argues that Steele's scheduled car-insurance payments are excessive.[22] But the evidence supports a finding that her schedules are correct, or at least that the number on the schedules is within a few dollars of the real monthly expense.

Johnson appears to suspect that Steele insures vehicles that she doesn't own or doesn't claim to own. But there is no evidence in the record to support this suspicion.

---

[18] Tr. Ex. 16 at 1.
[19] Tr. Ex. 16 at 2.
[20] Tr. Ex. 16 at 3.
[21] Tr. Ex. 16 at 4.
[22] DI 47 at 2, ¶ 2.D.

Page 7 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

### (e) Child support

Johnson claims that Steele failed to report that she received a child-support overpayment of more than $10,000.[23] The evidence showed that she previously received child support from him, but in 2018, the state court entered an order retroactively reducing child support. As a result, he had overpaid, and the support payments were suspended for as long as it took for the overpayment balance to fall to zero. Both parties agree that the overpayment remains positive, although they argue about when it will fall below zero.

Steele argues, correctly, that she need not include child support as part of the calculation of what she must pay under her plan. And, because she was not receiving any child support as of the time that she filed her schedules, her omission of child support from the schedules was appropriate.

But she also failed to mention in her statement of financial affairs (SoFA) that she received child-support payments during the two years preceding the petition date, although the form expressly requires that she include that information. Her explanation[24] is that "[a]s of August 2019, when the Statement of Financial Affairs was signed and filed, there was an overpayment and Debtor was not entitled to any payment during the two year period . . .."

I question the notion that a debtor need not disclose income that she received but shouldn't have received. The SoFA asks not what income the debtor was entitled to receive but what income the debtor actually received. And she actually did receive child-support payments during the two-year period—even though the state court in 2018 determined that she had received more than she should have.

---

[23] DI 47 at 2, ¶ 2.G.
[24] DI 98 at 7.

Page 8 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Even if I consider only what Steele was entitled to receive in 2017 and 2018 (according to the state court's 2018 modification), the amount of support she was entitled to receive during those years was not zero. So I don't agree with Steele that she was justified in entirely omitting any mention of the child support in her SoFA.

Nevertheless, I don't think the omission is evidence of bad faith. The SoFA does not provide clear guidance about what a debtor should do if she received too much income and was required (in effect) to give some of it back. It would have been better for her to disclose the facts and then attach an explanation rather than just saying nothing. But her failure to do so does not amount to bad faith—especially because the omission does not appear to have been calculated to obtain any advantage.

### (f) Darrin's employment and financial information

Johnson complains that, on the petition date, Steele did not maintain a household separate from Darrin.[25]

The introduction to Schedule I instructs, "If you are married and not filing jointly, and your spouse is living with you, include information about your spouse." The form asks questions about employment and monthly income, for which it provides blanks for information about both the debtor, on one hand, and a second debtor (if two spouses have filed jointly) or a "non-filing spouse." The introduction to the Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) asks whether the debtor is married; if the debtor is married, it also asks for the spouse's income in addition to the debtor's. The latter requirement is consistent with 11 U.S.C. § 1325(a)(4)(A), which sets the applicable commitment

---

[25] DI 47 at 4, ¶ 2.I.

Page 9 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

period at five years, rather than three years, if the income of both the debtor and the debtor's spouse (even if the spouse is not a debtor) exceed the median income.

Although Steele and Darrin in fact lived together when she filed her petition, her Schedule I filed with her petition provided employment and income information only for herself and not for him. Where the form asks whether any codebtor or nonfiling spouse is employed or not employed, she checked neither box. Where it asks for the spouse's income information, she entered "N/A," which I take to mean "not applicable." She separately disclosed in her SoFA (also filed with the petition) and her Form 122C-1[26] that she was married. Her Form 122C-1 filed with her petition included zeros for all items of the spouse's income. The net effect of the initial documents was to imply incorrectly that Darrin either did not live with her or had no income.

The trustee's initial confirmation objection said that Schedule I should be amended to include income for Darrin.[27] The trustee made the same request for expenses on Schedule J, but that form requires expense information for the debtor's spouse only if the spouse is also a debtor, which Darrin is not.

On October 31, 2019—after the trustee's initial objection—Steele reported employment and income information for Darrin on her first-amended Schedule I[28] and her first-amended Form 122C-1.[29] She attempts to excuse her omission of his information from the initial documents because she and he "maintained separate financial accounting for household

---

[26] DI 6 at 1, item 1.
[27] DI 47 at 1, ¶ c.(3).
[28] DI 23, Schedule I.
[29] DI 27.

Page 10 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Case 19-62534-dwh13    Doc 105    Filed 09/30/20

expenses,"[30] and she paid him a monthly amount intended to defray his mortgage expense and other expenses.[31]

There is no question that, because Steele and Darrin were married and living together on the petition date, she was required to include his income on her initial Schedule I and Form 122C-1. She hasn't disputed that those forms' instructions unambiguously require that information. And I reject any suggestion that her amendment of those forms—after the trustee had objected to confirmation on grounds including her omission of that information from Schedule I[32]—moots any challenge to her good faith based on her initial Schedule I and Form 122C-1.

But the question I must decide is whether, in light of the circumstances, Steele's failure to include Darrin's information in those forms requires a determination that she filed the petition in bad faith. Without excusing in any way her failure to include his information in her initial documents, I find that her testimony that she and he maintained separate finances is consistent with a mistaken, but nonetheless good faith, view that his employment and financial information needn't have been included. I conclude that her omission of his income was not intentionally deceptive. That finding is also consistent with my general conclusion from her trial testimony that she is honest but not detail-oriented, at least when it comes to the stressful primary subjects of her testimony, including her financial problems leading to bankruptcy. I conclude that Steele's misrepresentation does not warrant a finding of bad faith.

But I emphasize that I don't condone Steele's approach. Debtors must complete their schedules and forms truthfully and must provide exactly the information that is requested, even if

---

[30] DI 98 at 15:3-4.
[31] DI 98 at 15:12-20; Tr. Ex. 9.
[32] DI 17, item c.(3).

Page 11 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Case 19-62534-dwh13    Doc 105    Filed 09/30/20

they believe that that information is immaterial to their situation. Bankruptcy administration would be impossible if all debtors took it upon themselves to decide what information to disclose and what to omit. If a debtor believes that some information should not be disclosed, the proper approach is to disclose it anyway, accompanied by whatever explanation the debtor deems appropriate. This approach is both more honest and also less risky, because transparency is the best defense against an accusation of bad faith. In the specific context of misrepresentations on Schedule I and Form 122C-1, even though the income of a nondebtor spouse isn't included in the debtor's disposable income required to be paid under a chapter 13 plan,[33] a nonfiling, cohabitating spouse's income in comparison to the debtor's income could be relevant to determining the reasonableness of the debtor's claimed expenses, and a nonfiling spouse's income could be relevant to determining the ACP length.

Steele's failure initially to disclose Darrin's income was therefore improper. In a case in which the evidence of a debtor's good faith is otherwise equivocal, this kind of misrepresentation might be enough to tip the scale. But this is not such a case, and this omission alone does not demonstrate bad faith.

### (g) Distance from home to work

Johnson disputes Steele's claimed transportation expenses.[34] She adequately explained her high transportation expenses: she pays for her son's transportation. There was no counterevidence, and I accept her explanation.

---

[33] 11 U.S.C. §§ 1325(b)(2), 101(10A) (together defining "disposable income" to include a spouse's income only if the spouse is a joint debtor).
[34] DI 47 at 4, ¶ 2.J.

Page 12 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

### (h) Apartment

Johnson argued initially that Steele was paying rent for an apartment in which her 29-year-old, gainfully employed daughter lived.[35] I heard no evidence to support this contention. I did hear evidence that the daughter paid for her own apartment.

### (i) Vehicles

Johnson argues that Steele failed to disclose her interest in several vehicles: a Harley Davidson, a Ford Escort, and a Hyundai.[36] The evidence showed that she does not own these vehicles. The Hyundai belongs to Timothy Viets, but Steele regularly drives it and maintains the insurance on it.

Apparently, Steele was in possession of the motorcycle for some period of time, and she recently returned it to Darrin. But possession is not the same thing as ownership, and, as with the Hyundai, there is no evidence that she had any legal right to the motorcycle. Johnson argues that she possesses the title to the motorcycle.[37] But possessing a title certificate does not confer ownership of the vehicle any more than possessing the vehicle itself does. Johnson also says that the title was "signed over" to her. I don't know what he means by this, because he says in the preceding sentence that it's not titled in her name.[38]

Johnson argues that Steele actually does own these vehicles, or at least the Hyundai, and that she and Viets have left the title in his name as a ruse to deceive this court. She argues in response that ownership of a vehicle is determined by registration of the title.[39] I disagree. ORS 803.010 says only that a certificate of title is prima facie evidence of ownership. It is

---

[35] DI 47 at 4, ¶ 2.K.
[36] DI 47 at 5, ¶ 2.M.
[37] DI 99 at 38.
[38] DI 99 at 38.
[39] DI 98 at 5.

Page 13 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

possible that other evidence could prove that a person is the owner of a car despite the fact that someone else is named on the certificate of title. The contention that Viets lets her drive a car that belongs to him is consistent with the evidence that Viets's wife is Steele's sister, suggesting a familial connection. And Johnson's allegation that Viets traded the Hyundai for a worthless junker of a Jeep and has colluded in Steele's trickery for no apparent reason, is also implausible. Faced with two equally credible stories, I will rely on the prima facie evidence of the certificate of title.

### (j) Miscellaneous personal property (guns, camper, tools, television sets, electronics)

Johnson devoted much of his evidence and argument to showing that Steele is or has been in possession of various personal property that belongs to Darrin.

As I explained during the hearing, a chapter 13 debtor need not disclose that she is in possession of assets that she doesn't own. Her obligation is to disclose property that belongs to her. The evidence showed that these assets all belong to Darrin.

There was evidence that these assets are at issue in the Steele's' divorce, and Johnson argues that Steele should have disclosed the fact that the assets might be accorded to her. She has committed to providing the trustee with information about any assets she receives in the divorce.

### (k) Litigation claim against USAA

Johnson complains that Steele did include in her Schedule A/B a claim she holds jointly with Darrin against USAA.[40]

Exhibit 28, pages 28 through 56, evidence the claim against USAA, which mentions as USAA's policyholder only Darrin and not Steele. On that basis, I accept her testimony that the

---

[40] DI 47 at 5, ¶ 2.N.

Page 14 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

claim is his and not hers. And even if she has an interest in that claim, it arose during her marriage to him and will be the subject of the dissolution judgment.

### (l) Property subject to Steele and Darrin's divorce

Johnson complains that Steele failed to list in her Schedule A/B several other assets that she may be awarded, in whole or in part, in her pending divorce from Darrin, including $200,000 from a home sale, Darrin's 401K account, and spousal support.[41]

Steele is obligated to include in her Schedule A/B only property that she owned on the petition date. Johnson does not contend that Steele owns Darrin's house or 401K plan, and any spousal-support award would postdate the petition filing and has not yet occurred. In addition, as I discuss in part V below, she has committed to account to the trustee for any property she receives in the divorce.

## B. History of filings and dismissals

Steele has one previous bankruptcy case, a chapter 7 case in which she received a discharge in 1999. This history is not indicative of bad faith.

## C. Intent to defeat nonbankruptcy litigation

Johnson argues that Steele filed her bankruptcy petition shortly after he began garnishing her wages.

It is plausible that the wage garnishment was the immediate impetus for Steele's filing. But escaping from the pressure of debts, including wage garnishment, is a legitimate purpose of bankruptcy. Although a debtor's use of bankruptcy to delay or frustrate nonbankruptcy litigation is a sign of bad faith, her use of bankruptcy to discharge a debt that results from nonbankruptcy litigation is not.

---

[41] DI 47 at 5, ¶ 2.O.

Page 15 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Case 19-62534-dwh13    Doc 105    Filed 09/30/20

### D. *Egregious behavior*

Johnson argues that Steele filed this bankruptcy case as part of an ongoing effort to inflict distress on him and to damage his relationship with his children.

I accept the premise that a debtor who files bankruptcy purely out of spite—not to obtain a discharge but instead to inflict suffering on creditors—acts in bad faith. But there is no evidence, apart from Johnson's expressed suspicion, that Steele did so.

## V. Contingent property

I agree with Steele's comment that her entitlement to property that had been owned by either or both Darrin and her during their marriage will be resolved in their divorce.[42] But that fact doesn't detract from the Johnson's interest in how all her contingent property rights—those from her divorce from Darrin, the claim against her former lawyer, and the ServiceMaster/USAA claim—will affect plan distributions. Although, as a nonlawyer, he didn't cite a statutory basis for his concern, it is consistent with the "best-interest test" confirmation requirement of section 1325(b)(1)(A).

The manner in which the plan will treat those contingent rights needs clarification. The plan addresses only the claim against Steele's former lawyer, requiring Steele to "keep Trustee informed re status of claim against former dissolution attorney" and committing that "all net, non-exempt proceeds will be paid to Trustee," and "[p]lan will not be complete until claim is liquidated."[43] Her briefing contains somewhat more expansive descriptions of how contingent property rights will be treated. In her pretrial brief, she says that she "has committed all of her projected income to the Plan for at least a 36 month period, including any contingent assets,

---

[42] DI 98 at 5:4-9.
[43] DI 42 ¶ 15.

Page 16 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

should she become entitled to them during the Plan period."[44] The same brief also appears to commit to paying "proceeds of current husband's claims against USAA and ServiceMaster as a result of flood damages; and the pending dissolution proceeding, should there be additional assets to which she becomes entitled."[45] In her opening post-trial brief, she described her agreements to "account for" any assets and debts she becomes entitled to during the plan[46] and to "account for any assets or debts allocated or awarded to her in the dissolution proceeding, but such an award may not change the income available for payments under a Chapter 13 Plan."[47] In her rebuttal post-trial brief, she agreed to "account to the Trustee for any assets or debts that she becomes entitled to in the dissolution proceeding."[48] In oral closing argument on July 7, 2020, her lawyer said she would "keep the trustee informed of" the action against former divorce attorney and "account for" any assets allocated to her in divorce.

In view of the straight-forward best-interest test and the varying statements by Steele about how her contingent property rights will be treated under the plan, I reserve a determination on the plan's compliance with the best-interest requirement until after a hearing attended by counsel for the trustee.

Johnson also urges me not to trust that Steele will follow through on those commitments. I take that comment to question the plan's feasibility, a confirmation prerequisite under section 1325(a)(6). Because the chapter 13 trustee is regularly entrusted with responsibility for monitoring compliance with similar plan provisions, I decline to find the plan infeasible.

---

[44] DI 67 at 2:11-13.
[45] DI 67 at 2:18-23.
[46] DI 98 at 2.
[47] DI 98 at 19:19-21.
[48] DI 100 at 5:19-20.

Page 17 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Case 19-62534-dwh13    Doc 105    Filed 09/30/20

## VI. Conclusion

Without excusing Steele's disclosure deficiencies in this case, the evidence does not support a finding that she filed the petition in bad faith. I overrule Johnson's objection on that ground.

I will set this case for an adjourned plan-confirmation hearing to address whether the plan's treatment of Steele's contingent property rights meets the best-interest test.

# # #

cc: Steven Johnson

Page 18 – MEMORANDUM DECISION ON PLAN-CONFIRMATION OBJECTION OF etc.

Case 19-62534-dwh13    Doc 105    Filed 09/30/20